IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**NORMAN KUHBANDER,**

      **Plaintiff,**

v.                                                            Civil Action No. 3:19-CV-167
                                                                             (GROH)

**JOHN DOE #1,**
AKA **Lieutenant W. Moulton,**
**JOHN DOE #2,**
AKA **Segregated Housing Unit Lieutenant,**
**JOHN DOE #3, Captain Yeager**
AKA **Captain Yeager, and**
**RICHARD HUDGINS, FCI Gilmer,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 7, 2019, the *pro se* Plaintiff, who is a federal prisoner incarcerated in the Northern District of West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[1] On June 4, 2020, Plaintiff filed an amended complaint. ECF No. 52. Defendants filed a motion to dismiss or in the alternative for summary judgment in response to Plaintiff's amended complaint and memorandum and exhibits in support thereof on June 18, 2020. ECF Nos. 56, 57, 57-1, 57-2.

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:19-CV-167, unless otherwise noted.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the portions of the complaint be denied and dismissed with prejudice and portions be denied and dismissed without prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action on October 7, 2019, while incarcerated[2] at FCI Gilmer in the Northern District of West Virginia, alleging injuries related to a heart attack he suffered on January 17, 2019.  ECF No. 1.

On February 14, 2020, Defendants filed a motion to dismiss, memorandum in support thereof and exhibits.  ECF Nos. 31, 32, 32-1.  Following issuance of a Roseboro notice, Plaintiff filed a motion to amend on March 11, 2020.  ECF No. 36.

Following the February 18, 2020, issuance of an Order and Roseboro notice, Plaintiff filed his "First Amended Complaint" on March 11, 2020.  ECF Nos. 33, 36. Defendants filed a motion to strike the amended complaint on March 18, 2020, because it was not on a Court-approved form and failed to comply with the Local Rules of Prisoner Litigation Procedure. ECF No. 37.  On March 23, 2020, the Court ordered the amended complaint [ECF No. 36] stricken from the record.  ECF No. 38.

On April 2, 2020, Plaintiff filed another motion to amend the complaint.  ECF No. 43.  Plaintiff was granted leave to amend his complaint on April 21, 2020, but was required to refile an amended complaint on the Court-approved form and in compliance with the

---

[2] According to the Bureau of Prisons inmate locator website, Plaintiff has a projected release date of January 5, 2031.  https://bop.gov/inmateloc/

2

Local Rules. ECF No. 47.

The amended complaint filed June 4, 2020, alleges the following six claims: (1) that Defendant Moulton ("Moulton") "observed [Plaintiff] having a heart attack on Jan[uary] 14, 2019 and fail[ed] to provide proper medical care" [ECF No. 52 at 7]; (2) that Moulton violated Plaintiff's constitutional rights by "obstructing his ability to procure adequate medical care" on January 14, 2019 [Id. at 8]; (3) that Moulton violated the duty of care he owed to Plaintiff on January 14, 2019 [Id.]; (4) that John Doe #2, known as Segregated[3] Housing Unit Lt. ("SHU Lt."), and Captain Yeager ("Yeager") "Fail[ed] to abide by federal regulations which deprived [Plaintiff] of a meaningful opportunity to challenge the conditions of his confinement" [Id.]; (5) that SHU Lt. and Yeager breached their duty of care to Plaintiff, thereby preventing him from challenging his conditions of confinement [Id.]; and (6) that Plaintiff's continued custody violates his Fifth and Eighth Amendment rights, based on his denial of medical care, and that Plaintiff is entitled to relief pursuant to 28 U.S.C. § 2241. [Id. at 17]. Plaintiff asserts that because of Defendants' actions he suffered irrevocable damage to his heart, causing him physical pain and suffering. Id. at 9. Plaintiff does not state an amount of damages that he seeks in this action, but instead seeks "nominal damages" and "punitive damages". ECF No. 19. However, Plaintiff seeks an order from the Court that declares: (1) Moulton was deliberately indifferent to Plaintiff's serious medical condition; (2) Moulton violated Plaintiff's right to procure medical care; (3) Moulton's negligence intentionally inflicted emotion distress; (4) SHU Lt and Yeager violated Plaintiff's right to due process by preventing him from meaningfully challenging his condition of confinement; (5) negligence by SHU Lt and Yeager harmed Plaintiff; (6)

---

[3] The Court notes that the Federal Bureau of Prisons' operation of special housing units (SHU) at correctional institutions, is authorized by 18 U.S.C. 4042(a)(2) and (3), and 28 C.F.R § 541.20.

3

Plaintiff's sentence is being unlawfully executed.  Id. at 18.

Further, Plaintiff seeks an order enjoining: (1) his further confinement by Defendant Warden Hudgins ("Hudgins"); (2) the further violation of Plaintiff's right to due process; and (3) the further deprivation of Plaintiff's right to adequate medical care.  Id. at 19.

According to the amended complaint, Plaintiff did not file a grievance regarding his claims because "all [his] administrative remedy form requests were denied."  Id. at 4, 6.  The initial complaint states that Plaintiff filed a Form 95 for a Federal Tort Claims Act ("FTCA") grievance which was denied because Plaintiff was untimely in filing his grievance.  ECF No. 1 at 4.  Plaintiff did not submit copies of any administrative remedy requests or any rejection notice.

Defendants' motion to dismiss or for summary judgment argues that Plaintiff's claims must be dismissed for the following reasons: (1) that Plaintiff failed to exhaust his administrative remedies [ECF No. 57 at 7]; (2) that a Bivens cause of action cannot be sustained based on supervisory liability [Id. at 10]; (3) that Plaintiff cannot meet the two-part test to sustain a deliberate indifference claim [Id. at 12]; (4) that Plaintiff's claim for relief pursuant to 28 U.S.C. § 2241 is not cognizable in a Bivens action [Id. at 16]; and (5) that Defendants are entitled to qualified immunity [Id.].

Plaintiff filed a response in opposition to Defendants' motion on August 24, 2020.  ECF No. 76.  In his response, among other arguments, Plaintiff asserts that prison officials were "on notice" of his potential health risks because he was prescribed medication for a heart condition and has a family history of heart disease.  Id. at 4.

Defendants filed a reply on November 5, 2020.  ECF No. 81.

### III.     LEGAL STANDARD

### A.     Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[4] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### B.     Civil Rights Actions Under <u>Bivens</u>.

In <u>Bivens</u>, <u>supra</u>, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim,

---

[4] The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[5] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff

---

[5] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

6

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted). The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

C. **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with

7

respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." Porter v. Nussle, 534 U.S. 516, 524 (2002). "[F]ederal prisoners suing under Bivens [ ], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." Id. (internal citation omitted). Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through suit pursuant to Bivens. Booth v. Churner, 532 U.S. 731, 741 (2001).

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

8

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943,

952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but

the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.     ANALYSIS

### A.     Failure to State a Claim Against Yeager and Hudgins[6]

In a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>See Colburn v. Upper Darby Township</u>, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

In his amended complaint, Plaintiff named two defendants against whom he did not allege any specific acts which violated his Constitutional rights,[7] Captain Yeager ("Yeager") and Warden Hudgins ("Hudgins"). Further, according to the amended complaint, neither Yeager nor Hudgins are alleged to have taken any individual actions against Plaintiff. Rather, Plaintiff asserts that Yeager violated his rights through a "failure to abide by federal law" which prevented Plaintiff from challenging his conditions of confinement, and that Yeager's negligent conduct harmed Plaintiff. ECF No. 52 at 18. Plaintiff does not specify what negligent conduct by Yeager harmed him, and does not allege that he had any personal interaction with Yeager. Additionally, Plaintiff claims that Warden Hudgins violated his rights by keeping him in custody. <u>Id.</u> at 17, 19. Again,

---

[6] The Court notes by a motion filed August 24, 2020, Plaintiff attempted to add two additional parties as defendants, Eddie Anderson and Alicia Wilson. ECF No. 75 at 1. However, that motion was made after Plaintiff was already permitted to amend his complaint and after Defendants had filed two separate motions to dismiss. Moreover, even if he were permitted to amend his complaint to add either Eddie Anderson or Alicia Wilson, Plaintiff's claims against those individuals would fail because he failed to make any specific allegations against either of those individuals. Accordingly, the undersigned recommends that Plaintiff's motion [ECF No. 75] be denied.

[7] To the extent that Plaintiff attempts to challenge his custody pursuant to 28 U.S.C. § 2241, a <u>Bivens</u> action is not the proper forum to do so. To do so, Plaintiff would be required to file a separate civil action on the Court-approved form for a § 2241 proceeding, and pay the appropriate filing fee in that action.

Plaintiff does not specify what specific conduct by Hudgins harmed him, and does not allege that he had any personal interaction with Warden Hudgins.

Plaintiff has failed to meet the requirements to maintain a <u>Bivens</u> case against either Yeager or Hudgins because he failed to specify the acts taken by each defendant which violate his Constitutional rights. Accordingly, Plaintiff has failed to state a claim against either Yeager or Hudgins, and those Defendant merit dismissal from this action with prejudice.

### B. Failure to State a Claim Against Unnamed Defendant

In the amended complaint Plaintiff lists one defendant who is identified as only "John Doe #2, known as Segregated Housing Unit Lieutenant" ("SHU Lt."). ECF No. 52 at 2. As Defendant SHU Lt., Plaintiff has failed to comply with the requirements of the Federal Rules of Civil Procedure requirements. First, Plaintiff has failed to provide the name of that Defendant as required by Federal Rule of Civil Procedure Rule 10(a), which requires that the "title of a complaint must name all the parties." Second, Plaintiff is required to provide, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 55 (quoting Fed. R. Civ. P. 8(a)(2) and <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Plaintiff's complaint fails to identify the SHU Lt. by name.

Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted as to Defendant SHU Lt., this Court recommends that this matter be dismissed with prejudice as to John Doe, also known as SHU Lt.

The Court further notes that Plaintiff filed a second amended complaint on August 24, 2020. ECF No. 78. Therein Plaintiff alleges that "John Doe, aka Health Service Employee" violated his civil rights. Id. Moreover, Plaintiff's failure to identify by name John Doe, aka Health Services Employee, would, like his claim against John Doe, also known as SHU Lt., fail because it fails to state a claim upon which relief may be granted.

### C. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has recognized "that the Act's exhaustion provisions would apply to *Bivens* suits." Ziglar v. Abbasi, 137 S. Ct. 1843, 1865 (2017) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983 (2002)). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524.

Defendants have raised Plaintiff's failure to exhaust his administrative remedies as a defense to suit.

Plaintiff claims that his failure to exhaust was caused by Bureau of Prisons staff who prevented him from filing his grievances. ECF No. 76 at 1 – 2. However, Plaintiff also asserts that his administrative remedy requests were denied. ECF Nos. 52 at 4, 6, and 76 at 2. As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no

15

satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director ("RD") signed the response.[8] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP's record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected

---

[8] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

at that level and re-files at the same level, the suffix would be "F2."

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint. If the inmate is not given an opportunity to fix his complaint he may appeal to the next level. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels.

In Ross v. Blake, 136 S.Ct. 1850, 1860 (2016), the Supreme Court described the three ways that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" when: (1) despite regulations promise, the remedy operates as a simple dead end, "with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (citing Booth v. Churner, 532 U.S. at 736, 738); (2) the administrative remedy scheme is "so opaque that it becomes, practically speaking, incapable of use," or is so "unknowable such that no ordinary prisoner can make sense of what it demands" (citing Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007) and Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008); and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Plaintiff claims that he was prevented from filing a grievance while at FCI Gilmer, but presents nothing[9] to support his claim. By contrast, Defendants submitted a

---

[9] The Court notes that in support of Plaintiff's claim that he was prevented from filing an administrative remedy, Plaintiff submitted two declarations by other inmates who were incarcerated in the SHU at the same time Plaintiff was. ECF Nos. 52-3, 76-1. However, both declarations concern only the other inmates' experiences in being denied access to the grievance process and neither supports Plaintiff's assertions that he was denied access to the grievance process. Id.

17

declaration from a paralegal for the Federal Bureau of Prisons with attachments detailing other administrative remedies pursued by Plaintiff that did not concern his medical treatment. ECF No. 57-1 at 2 - 5, 20. At a minimum, Plaintiff prepared six separate administrative remedy requests in 2018 and 2019: (1) Remedy 91967-F1, concerning computation of sentence, filed May 31, 2018; (2) Remedy 962724-R1, concerning a DHO appeal, filed on December 7, 2018; (3) Remedy 986171-F1, concerning computation of sentence, filed July 1, 2019; (4) Remedy 986171-R1, concerning computation of sentence, filed August 19, 2019; (5) Remedy 986171-R2, concerning computation of sentence, filed September 12, 2019; and (6) Remedy 986171-R3, concerning computation of sentence, filed October 12, 2019. ECF No. 57-1 at 20. Three of those administrative remedies were filed after Plaintiff's heart attack on January 17, 2019, but before he filed the instant action on October 7, 2019. Id. According to the Administrative Remedy Retrieval Form, Plaintiff did not submit a single administrative remedy request regarding his medical treatment, even an untimely request. Because the Court finds Plaintiff failed to available exhaust administrative remedies, therefore depriving this Court of jurisdiction, the Court need not address any of the merits of Plaintiff's claims.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999). Plaintiff's failure to exhaust his available administrative remedies thus depriving this Court of jurisdiction over his complaint. Accordingly, as to Defendant Moulton, this matter is subject to dismissal

18

without prejudice.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's amended complaint [ECF No. 52] be **DISMISSED WITH PREJUDICE** as to **DEFENDANTS JOHN DOE #2 ALSO KNOWN AS SEGREGATION HOUSING UNIT LT., JOHN DOE #3 ALSO KNOWN AS CAPTAIN YEAGER, AND ROBERT HUDGINS.**

It is further **RECOMMENDED** that the amended complaint [ECF No. 52] be **DISMISSED WITHOUT PREJUDICE** AS TO **MOULTON** for failure to exhaust administrative remedies.

It is also **RECOMMENDED** that Defendants' motion to dismiss [ECF No. 56] be **GRANTED**. It is further **RECOMMENDED** that Plaintiff's motion [ECF No. 75] be **DENIED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas

.

v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the pro se Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:   December 22, 2020

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE